UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS SNEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHILIPS NORTH AMERICA, LLC, PHILIPS HEALTHCARE INFORMATICS, INC., PHILIPS RS NORTH AMERICA LLC, f/k/a RESPIRONICS, INC., and KONINKLIJKE PHILIPS ELECTRONICS N.V.,<br><br>Defendants. | C.A. No.<br><br><br><br><br><br><u>**CLASS ACTION COMPLAINT**</u><br>**(JURY TRIAL DEMANDED)** |

## <u>INTRODUCTION</u>

1.      Plaintiff Thomas Snee ("Plaintiff") by and through undersigned counsel, brings this action against Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), Philips Healthcare Informatics, Inc. ("Philips Health"), and Philips RS North America LLC, f/k/a Respironics, Inc. ("Philips RS") (collectively, "Defendants" or "Philips") on behalf of himself and all others similarly situated, and makes the following allegations based upon

information, attorney investigation and belief, except for the allegations about himself and his personal circumstances, which are alleged based upon persoanl knowledge:

## PRELIMINARY STATEMENT

2.     Plaintiff brings this action on behalf of himself and other similarly situated purchasers of Philips Continuous Positive Airway Pressure ("CPAP"), Bi-Level Positive Airway Pressure ("PAP") and mechanical ventilator devices (together, "PAP Machines") developed, manufactured, and distributed by Defendants with a defective foam component that degrades and emits harmful chemicals resulting in serious health risks to consumers, including the risks of developing Type 2 Diabetes, heart problems and cancer.[1]

3.     Defendants have long known that the polyester-based polyurethane ("PE- PUR") sound abatement foam in the PAP Machines had a propensity to degrade and emit harmful chemicals (the "Defect"), yet they chose to withhold that information from millions of consumers who rely on the PAP Machines to treat their serious sleep disorders.[2]

4.     Not only did Defendants fail to disclose this known Defect and the

---

[1] **Ex A.**: Philips Respironics Recall letter
[2] **Ex. B**: Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021

health risks it posed to Plaintiff and class members, but they also actively concealed the Defect from consumers—while continuing to manufacture, market and distribute the PAP Machines, to the detriment of millions of consumers.

5.      After learning of the Defect, Defendants first chose to update their shareholders of the serious health consequences posed by the PAP Machines and later to issue a recall of the machines. Even then, Defendants have yet to issue notice directly to the millions of consumers who rely on the machines to treat their serious medical conditions.[3]

6.      As a result of the Defect and considerable costs associated with finding substitute treatment for Plaintiff's and Class members' sleep disorders, Plaintiff and Class members have suffered injury in fact, incurred damages, and otherwise been harmed by Defendants' conduct, and will continue to suffer due to the extended time it is going to take the Defendants to replace any the defective devices.

7.      This action seeks damages based on, *inter alia*, Defendant's negligence, breaches of express warranties, breaches of implied warranties, violation of the Magnuson-Moss Act, misrepresentations, and medical

---

[3] *Id.*

monitoring.

## PARTIES

8.      Plaintiff Thomas Snee is an individual and resident of the State of South Carolina.

9.      Plaintiff was diagnosed with sleep apnea in 2016 and purchased a DreamStation CPAP machine in 2017. Because of the recall, Plaintiff has been forced to continue using his DreamStation as he is unable to obtain a replacement machine and requires the assistance of a machine to sleep safely.

10.      Defendant Philips RS North America LLC (formerly Respironics, Inc.) is a Delaware corporation with its principal place of business located at 1001 Murry Ridge Lane, Murrysville, PA 15668.

11.      Defendant Philips North America LLC is a Delaware LLC with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

12.      Defendant Philips Healthcare Informatics, Inc., a division of Philips North America, LLC, is a Delaware corporation with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

13.      Defendant Koninklijke Philips N.V is a foreign corporation, with its principal place of business at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent corporation of

Defendants Philips NA, Philips Health and Philips RS.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (ii) Plaintiff and members of the proposed class are citizens of states different from Philips' home states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Philips NA LLC, and Philips Healthcare Informatics, Inc., both have their principal places of business in this District, Defendants Philips NA and Philips Health transact business in this District, and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

3.      This Court has Personal Jurisdiction over Defendant Philips NA and Philips Health because they have sufficient minimum contacts in this District, conduct substantial business in this District, and they have intentionally and purposefully placed the CPAP and BiPAP machines into the stream of commerce within Massachusetts and throughout the United States.

## FACTUAL ALLEGATIONS

4.      Defendants are collectively in the business of developing, manufacturing, selling, supporting, maintaining, and servicing devices for sleep and respiratory care, including the defective PAP Machines.[4]

5.      Philips' PAP Machines treat sleep apnea, a "condition marked by abnormal breathing during sleep."[5] These "breathing lapses cause lower-quality sleep and affect the body's supply of oxygen, leading to potentially serious health consequences."[6]

6.      Positive airway pressure ("PAP") therapy "…uses a machine to pump air under pressure into the airway of the lungs. This helps keep the windpipe open during sleep." [7]

7.      Philips offers three types of PAP machines: CPAP machines, Auto-Adjusting machines, and BiPAP bi-level machines. CPAP provides "one level of pressure to your upper airway throughout the night."[8] Auto-adjusting machines "provide[ ] a variable pressure throughout the night based on your

---

[4] https://www.usa.philips.com/healthcare/solutions/breathing-and-respiratory-care.
[5] https://www.sleepfoundation.org/sleep-apnea (accessed July 8, 2021).
[6] *Id.*
[7] https://medlineplus.gov/ency/article/001916.htm.
[8] https://www.usa.philips.com/c-e/hs/sleep-apnea-therapy/i-currently-use-sleep-apnea-therapy/sleep-apnea-machines.html (last accessed July 8, 2021).

needs and sleep stage."[9] BiPAP bi-level machines "provide [] two levels of pressure throughout the night, your prescribed pressure on the inhale and a lower pressure on the exhale."[10]

8.      Philips advertises itself as a trusted brand and "global leader in the sleep and respiratory markets."[11] Its branding promises consumers that they will "[b]reathe easier, sleep more naturally[.]"[12]

9.      Philips further assures consumers that its "sleep therapy systems are designed with the needs of care practitioners and patients in mind," and that its "quality systems reflect [Philips' commitment to providing exceptional therapy," among other things.[13] In addition, it has long advertised its PAP Machines as "clinically proven" treatment for sleep disorders. The PAP Machines can cost hundreds, even thousands, of dollars per machine.

10.      On June 14, 2021, Philips issued an "urgent" recall of twenty (20) models of its PAP Machines, in which it acknowledged that the Defect can cause "serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."[14] The

---

[9] *Id.*
[10] *Id.*
[11] http://www.respironics.com/us_en.
[12] http://www.respironics.com/product_library.
[13] https://www.usa.philips.com/healthcare/solutions/sleep.
[14] Philips Respironics Recall letter.

PE-PUR sound abatement foam can "degrade into particles" which can then "enter the device's air pathway and be ingested or inhaled by the user" and can "off-gas certain chemicals" into the consumer.[15]

11.    The recall affects millions of machines—and importantly, Plaintiff and others in the Class who rely on those machines—manufactured before April 26, 2021. The following models of Philips' PAP Machines have been

### Affected Devices

| All Devices manufactured before 26 April 2021, All serial numbers | |
| --- | --- |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | E30 (Emergency Use Authorization) |
| Continuous Ventilator, Non-life Supporting | DreamStation ASV |
| | DreamStation ST, AVAPS |
| | SystemOne ASV4 |
| | C-Series ASV |
| | C-Series S/T and AVAPS |
| | OmniLab Advanced+ |
| Noncontinuous Ventilator | SystemOne (Q-Series) |
| | DreamStation |
| | DreamStation Go |
| | Dorma 400 |
| | Dorma 500 |
| | REMstar SE Auto |

| All Devices manufactured before 26 April 2021, All serial numbers | |
| --- | --- |
| Continuous Ventilator | Trilogy 100 |
| | Trilogy 200 |
| | Garbin Plus, Aeris, LifeVent |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | A-Series BiPAP Hybrid A30 (not marketed in US) |
| | A-Series BiPAP V30 Auto |
| Continuous Ventilator, Non-life Supporting | A-Series BiPAP A40 |
| | A-Series BiPAP A30 |

recalled[16]:

12.    Philips first publicly acknowledged the Defect on April 26, 2021, by

---

[15] *Id.*

[16] https://www.philipssrcupdate.expertinquiry.com/?ulang=en

issuing an "update" to its shareholders in which it admitted the "potential health risks related to [the] sound abatement foam" in its PAP Machines in its April 26, 2021 Quarterly Report.[17]

13.     In the quarterly statement to shareholders, Defendants said, "[The] potential risks of particulate exposure [from PE-PUR degradation] include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects. The potential risks of chemical exposure due to off-gassing include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."[18]

14.     Defendants have advised consumers who use the CPAP and BiLevel PAP machines to immediately "discontinue use" and consult their physicians.[19] However, Philips acknowledges "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy.[20]

15.     Philips did not communicate any information about the serious health risks posed by its PAP Machines to anyone except its shareholders

---

[17] Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021
[18] *Id.*
[19] Philips Respironics Recall Letter
[20] *Id.*

until June 14, 2021, via the Recall Letter.[21]

16.     Four weeks before it issued the recall, Philips stopped shipments of the PAP Machines, only then to issue a recall to the public.

17.     It is unclear when the Defendants first learned of the Defect, but they admit to receiving "user reports" and complaints about the Defect and to conducting testing that confirmed the potentially serious health consequences from the defective PE-PUR sound abatement foam.[22]

18.     Based on the recall year range, Philips has known about the Defect for years, meaning that the Defendants have known consumers were exposed to and experiencing the physical symptoms caused by their PAP Machines.[23]

19.     Ironically, Philips stated online that, "There is nothing we take more seriously than providing patients with high quality products that are safe and reliable. If an issue arises, we are proactive in communicating and addressing it as we work tirelessly towards a resolution."[24] Yet, rather than issue an immediate direct recall notice to the consumers affected by the Defect, Philips

---

[21] *Id.*
[22] Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021
[23] *Id.*
[24] Sleep and respiratory care update | Philips;
https://www.usa.philips.com/healthcare/e/sleep/communications/src-update

issued a delayed online recall notice, which directs "patients, users and caregivers" to register their units and "begin a claim" for affected units.[25]

20.     Philips relies on empty promises that it has a "comprehensive plan to replace the current sound abatement foam with a new material that is not affected by this issue and has already begun this process."[26]

## STATUTE OF LIMITATIONS

21.     Philips has known about the defect while continuously marketing and selling the defective PAP Machines to unsuspecting consumers and representing to those consumers that the machines are safe and "clinically proven" during the entirety of the class period.

22.     Despite its knowledge about the Defect, Philips failed to disclose and rather, concealed this material information from Plaintiff and Class members.

23.     Plaintiff and other members of the Class justifiably relied on Philips to disclose the Defect in the PAP Machines that they purchased, because the Defect was not discoverable by them through reasonable means.

24.     By purposefully concealing the Defect from consumers in order to

---

[25] *Id.*

[26] https://www.usa.philips.com/healthcare/e/sleep/communications/src-update.

continue to gain a profit off them, all potentially relevant statutes of limitations have been tolled.

## **CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action on his own behalf, and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:**

All persons in the United States who have purchased the PAP Machines.

Or, in the alternative,

**South Carolina Subclass:**

All persons in South Carolina who have purchased the PAP Machines.

26.     Together, the Nationwide Class and South Carolina Subclass will be referred to collectively as the "Class."

27.     Excluded from the Class are Defendants, any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers and their immediate family members and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this

litigation.

28.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

30.    Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Philips acknowledges that millions of PAP Machines, and thus millions of consumers, are affected.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

31.    Plaintiff's claims are typical of the claims of the Class since his

machine contains the same PE-PUR foam defect contained in the affected machines of all members of the Class. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class members.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

32.    Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

### Predominance and Superiority:  Fed. R. Civ. P. 23(b)(3)

33.    A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members and questions of law and fact common to all class members predominate over questions affecting only individual class members. Class members can be readily identified and notified based on, *inter alia*, Defendants' records of PAP Machine sales, and other records maintained by Defendants.

### Common Questions of Fact and Law: Fed. R. Civ. P. 23(a)(2)

34.    Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class

members. These common legal and factual questions include, but are not limited

to:

a. Whether Defendants engaged in the conduct alleged herein;

b.  Whether Defendants' PAP Machines are predisposed to the Defect;

c. Whether Defendants purposefully failed to disclose the existence and cause of the Defect;

d. Whether Defendants misrepresented the PAP Machines as safe;

e. Whether Defendants' conduct, as described herein, was likely to mislead a reasonable consumer;

f. Whether Defendants' statements, concealments and omissions regarding the PAP Machines were material to a reasonable consumer;

g. Whether the PAP Machines were unfit for the ordinary purposes for which they were used;

h. Whether Defendants' conduct tolls any or all applicable limitations periods;

i. Whether the Defect is latent or hidden, such that Plaintiff and members of the Class could not have reasonably discovered it;

j. Whether Defendants' conduct alleged herein constitutes a breach of express warranty;

k. Whether Defendants' conduct alleged herein constitutes a breach of the implied warranty of merchantability;

l. Whether Defendants have been unjustly enriched by the conduct alleged herein;

m. Whether Plaintiff and the members of the Class are entitled to damages and if so, the measure of damages for the Class;

n.  Whether Plaintiff and members of the Class are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

35.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

<u>**COUNT I**</u>
**Breach of Express Warranty**
**(As to All Defendants)**

36.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

37.    Plaintiff brings this count on behalf of himself and the Class.

38.    Philips expressly warranted to Plaintiff and Class members that the PAP Machines were safe and would work as advertised to "… make life better."[27]

39.    Philips made these express warranties regarding the defective PAP Machines' quality and fitness for use in writing through its website, advertisements, and marketing materials and on the PAP Machines' packaging and labels. These express warranties became part of the basis of the bargain that

---

[27] https://www.usa.philips.com/c-e/hs/sleep-apnea-therapy/dare-to-dream.html

Plaintiff and the Class entered into upon purchasing the PAP Machines.

40.     Philips' advertisements, warranties, and representations were made in connection with the sale of the PAP Machines to Plaintiff and the Class.

41.     Plaintiff and members of the Class relied on these express warranties when choosing to purchase the PAP Machines.

42.     The PAP Machines do not conform to Phillips' advertisements, warranties and representations in that they are not safe and do not work as advertised to "…make life better."

43.     Defendants breached the express warranty by knowingly selling to Plaintiff and Class members PAP Machines which, at the point of sale, were not of high quality, were not safe and did not work properly, but rather contained a defective component that renders the PAP Machines dangerous.

44.     Defendants knew or had reason to know that the PAP Machines contained the Defect when it sold the machines to Plaintiff and Class Members.

45.     Defendants failed to inform Plaintiff and Class members of the Defect.

46.     Instead, Phillips concealed the dangerous health effects of the PAP Machines and deceptively represented that these products were safe, healthy and appropriate for use.

47.    The adverse health effects associated with the use of the PAP Machines existed when they left Philips' possession or control and were sold to Plaintiff and members of the Class.

48.    Plaintiff and Class members purchased PAP Machines that contained the Defect, which was undiscoverable by them at the time of purchase.

49.    As manufacturers, marketers, advertisers, distributors and sellers of the PAP Machines, Defendants had exclusive knowledge and notice that the PAP Machines did not conform to the affirmations of fact and promises made by them.

50.    As a result of the Defect in the PAP Machines, Plaintiff and Class members have suffered damages including but not limited to the cost of the defective device, loss of device use and other related damage.

51.    Thus, Defendants' attempt to limit or disclaim express warranties in any manner that would exclude coverage of the Defect is unenforceable and void.

52.    Recovery by the Class is not restricted to any written warranties promising to repair and/or correct defects.

53.    Defendants' conduct is the direct and proximate cause of the injuries suffered by the Plaintiff and Class members.

54.     Plaintiff and Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

**COUNT II**
**Breach of the Implied Warranty of Merchantability**
**(As to All Defendants)**

55.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

56.     Plaintiff brings this count on behalf of himself and the Class.

57.      Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

58.     There was a sale of goods from Defendants to Plaintiff and the Class.

59.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective PAP Machines Defendants impliedly warranted to Plaintiff and Class members that its PAP Machines were fit for their intended purpose in that they would be safe to treat Plaintiff's and Class members' sleep disorders.

60.     Contrary to these representations and warranties, the PAP Machines were not fit for their ordinary use and did not conform to Defendants' affirmations

of fact and promises as use of the PAP Machines was accompanied by the risk of adverse health effects that do not conform to the packaging.

61.    Defendants breached the implied warranty in the contract for the sale of the PAP Machines by knowingly selling to Plaintiff and Class members a product that Defendants knew would expose Plaintiff and Class members to significant health risks, thus meaning Defendants knew that the PAP Machines were not fit for their intended purpose.

62.    Defendants were on notice of this breach, as they were made aware of the adverse health effects accompanying use of the PAP Machines.

63.    Plaintiff and Class members did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

64.    Plaintiff and members of the Class are the intended beneficiaries of Philips' implied warranties.

65.    The PAP Machines were not altered by Plaintiff or Class members.

66.    Plaintiff and Class members used the PAP Machines in the ordinary manner in which such devices were intended to be used.

67.    The PAP Machines were defective when they left the exclusive

control of Philips. The PE-PUR foam always posed an unreasonable risk of degrading, exposing consumers to serious health risks.

68.     The PAP Machines were defectively designed and/or manufactured and unfit for their intended purpose, and Class members did not receive the goods that they bargained for.

69.     Plaintiff and Class members purchased PAP Machines that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

70.     As a result of the defect in the PAP Machines, Plaintiff and Class members have suffered damages including, but not limited to, the cost of the defective device, loss of use of the device and other related damage.

71.     Defendants breached the implied warranty of merchantability to the Plaintiff and Class members.

72.     Thus, Defendants' attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

73.     Plaintiff and Class members have been damaged by Defendants' breach of the implied warranties.

74.     Plaintiff and Class members have suffered damages in an amount to

be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT III
### Strict Liability – Failure to Warn
### (As to All Defendants)

75.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

76.     Plaintiff brings this count on behalf of himself and the Class.

77.     Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the PAP Machines.

78.     Defendants were in a superior position to know of the Defect, yet, as outlined above, chose to do nothing when the defect became known to them.

79.     Defendants failed to provide adequate warnings regarding the risks of the PE-PUR foam after knowledge of the Defect was known only to them.

80.     Defendants had information regarding the true risks but failed to warn Plaintiff, Class members, and their physicians to strengthen their warnings.

81.     Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendants instead chose to actively conceal this knowledge from the public.

82.     Plaintiff and Class members would not have purchased, chosen, and/or paid for all or part of the PAP Machines if they knew of the Defect and the risks of purchasing the PAP Machines.

83.     The Defect proximately caused Plaintiff's and Class members' damages.

84.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IV
### Strict Liability – Design Defect
### (As to All Defendants)

85.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.     Plaintiff brings this count on behalf of himself and the Class.

87.     The design of the PAP Machines, including, but not limited to, design and use of the PE-PUR foam and the placement of the foam within the PAP Machines, was defective and unreasonably dangerous.

88.     Inhalation of the degrading PE-PUR foam while the PAP Machines were in use by Plaintiff and Class members, caused exposure to materials with toxic

and carcinogenic effects.

89.     The design of the PAP Machines and the PE-PUR foam rendered the PAP Machines not reasonably fit, suitable, or safe for their intended purpose.

90.     The dangers of the degrading PE-PUR foam in PAP Machines outweighed the benefits and rendered the PAP Machines unreasonably dangerous.

91.     There are other PAP Machines and other similar machines that do not use a similarly toxic foam, meaning that there were other means of production available to Defendants.

92.     The PAP Machines were unreasonably unsafe, and the products should have had stronger and clearer warnings or should not have been sold in the market.

93.     The PAP Machines did not perform as an ordinary consumer would expect.

94.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT V
### Negligent Failure to Warn
### (As to All Defendants)

95.     Plaintiff incorporates by reference all preceding allegations as though

fully set forth herein.

96.     Plaintiff brings this count on behalf of himself and the Class.

97.     Defendants owed Plaintiff and Class members a duty of care and to warn of any risks associated with the PAP Machines.

98.     Defendants knew or should have known of the defect but failed to warn Plaintiff, Class members, and their doctors.

99.     Defendants' breach of duty caused Plaintiff and Class members economic damages and injuries in the form of exposure to materials with toxic and carcinogenic effects.

100.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VI
### Negligent Design Defect
### (As to All Defendants)

101.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

102.    Plaintiff brings this count on behalf of himself and the Class.

103.    Defendants owed Plaintiff and the Class a duty to design the PAP

Machines in a reasonable manner.

104.     The design of the PAP Machines and the PE-PUR foam was defective and unreasonably dangerous, causing degradation and inhalation of the foam, and causing exposure to materials with toxic and carcinogenic effects.

105.     The design of the PAP Machines caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the PAP Machines outweighed the benefits and rendered the products unreasonably dangerous.

106.     There are CPAP and other machines that do not use the PE-PUR toxic foam that is subject to degradation, inhalation, and ingestions.

107.     The risk/benefit profile of the PAP Machines was unreasonable, and the products should have had stronger and clearer warnings or should not have been sold in the market.

108.     The PAP Machines did not perform as an ordinary consumer would expect.

109.     The Defendants' negligent design of the PAP Machines and the subsequent recall was the proximate cause of damages to the Plaintiff and the Class members.

110.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages

and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Violation of the Magnuson-Moss Act, 15 U.S.C. §2301
### (As to All Defendants)

111.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

112.   Plaintiff brings this count on behalf of himself and the Class.

113.    The Magnuson-Moss Act contains, in pertinent part, the following definitions:

(1) The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)

(2) The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

(3) The term "supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.

(4) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

(5) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

15 U.S.C.A. § 2301.

114.    Plaintiff and members of the Class are "consumers". 15 U.S.C. § 2301(3).

115.    Philips is a "supplier" and "warrantor."  15 U.S.C. § 2301(4) and (5).

116.    The PAP machines are consumer products. 15 U.S.C. § 2301(1).

117.    This is a claim arising out of state law, pursuant to 15 U.S.C. § 2301 (7).

118.    Philips impliedly warranted that the PAP Machines would be free of defects at the time of delivery, and the PAP Machines carried an implied warranty of merchantability.

119.    Philips breached its warranties by offering for sale and selling PAP Machines that were by design and construction defective and unsafe, thereby subjecting Class members who purchased the PAP Machines to damages and risks of loss and injury.

120.    Philips has breached and continues to breach its written and implied warranties of safety, thereby damaging Plaintiff and Class members, when their PAP Machines failed to perform as represented due to an undisclosed Defect.

121.    As a result of Philips' continued breach of its warranties, Plaintiff and Class members have suffered damages in the form of economic loss.

122.    Plaintiff and the Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Philips' wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Class may be entitled.

**COUNT VIII**
**Negligence / Gross Negligence**
**(As to All Defendants)**

123.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

124.    Plaintiff brings this count on behalf of himself and the Class.

125.    Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, testing, quality assurance, quality control, labeling, warning, sale and/or distribution of the Philips CPAP and BiPAP devices, including a duty to assure that their products did not pose a significantly increased risk of life-threatening bodily harm and disease.

126.   Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, warning, marketing, promotions and distribution of the Philips CPAP and BiPAP devices as Defendants knew or should have known that these products caused significant bodily harm and were not safe for use by consumers.

127.   The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a.   Negligently designing the recalled devices' PE-PUR sound abatement foam such that it has a high propensity to release toxic and carcinogenic particles during normal use of the device;

b.   Negligently designing the recalled products such that they contain built-in settings for use that allow a user to increase the heat and humidity of the air in the device, despite Defendants knowing that heat and humidity can exacerbate the release of the toxic and carcinogenic particles from the PE-PUR sound abatement foam;

c.   Designing, manufacturing, producing, creating, and/or promoting the devices for use in treating sleep apnea without adequately, sufficiently, or thoroughly testing them, including both pre-market testing and post-market surveillance;

d.   Failing to conduct sufficient testing programs to determine whether or not the PE-PUR sound abatement foam was safe for use in the devices;

e.   Selling the devices without making proper and sufficient tests to determine the dangers when used in a reasonably foreseeable and normal manner;

f.   Failing to fully report the serious dangers associated with the PE-PUR sound abatement foam used in all of the recalled devices;

g.   Failing to use due care in designing and manufacturing the devices so

as to ensure good performance and durability and reduce the risk of degradation and off-gassing of toxic and carcinogenic particles that could be directly inhaled by the user;

h.   Failing to accompany their products with proper warnings;

i.   Failing to accompany their products with proper instructions for use;

j.   Failing to conduct adequate testing, including pre-clinical and clinical testing and postmarketing surveillance to determine the safety of the recalled devices when used normally;

k.   Otherwise acting in a careless and/or negligent manner.

128.   Despite the fact that Defendants knew or should have known that use of the Philips CPAP and BiPAP devices caused harm to individuals that used the devices, Defendants continued to market, manufacture, distribute and/or sell the Philips CPAP and BiPAP devices for use in treating sleep apnea.

129.   Defendants knew or should have known that consumers, such as Plaintiff and Class members, would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

130.   Defendants' negligence was the proximate cause of Plaintiff's and Class Members' economic loss which Plaintiff and Class members have and will continue to suffer.

131.   Plaintiff and the Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a

declaratory judgment, a court order enjoining Philips' wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Class may be entitled.

## COUNT IX
### Negligent Misrepresentation
### (As to All Defendants)

132.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

133.   Plaintiff brings this count on behalf of himself and the Class.

134.   Defendants supplied false information to the public, Plaintiff, Plaintiff's physicians, Class members, and Class members' physicians regarding the high-quality, safety and effectiveness of the Philips CPAP and BiPAP devices. Defendants provided this false information to induce the public, Plaintiff, Plaintiff's physicians, Class members, and Class members' physicians to purchase and use the Philips CPAP and BiPAP devices.

135.   Defendants knew or should have known that the information they supplied regarding the purported high-quality, safety and effectiveness of the Devices would induce the public, Plaintiff, Plaintiff's physicians, Class members, and Class members' physicians to purchase and use the Philips CPAP and BiPAP devices and was false and misleading.

136.   The public, Plaintiff, Plaintiff's physicians, Class members, and Class members' physicians relied on the false information supplied by Defendants to Plaintiff's and Class members' detriment by causing the Philips CPAP and BiPAP devices to be purchased and used by Plaintiff and Class members.

137.   Plaintiff and Class members were justified in their reliance on the false information supplied by Defendants regarding the purported high-quality, safety and effectiveness of the Philips CPAP and BiPAP devices.

138.   As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class members suffered significant damages, including but not limited to economic loss caused by the recall of the Philips CPAP and BiPAP devices.

139.   Plaintiff and the Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Philips' wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Class may be entitled.

## COUNT X
### Unjust Enrichment

140.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

141.   Plaintiff brings this count on behalf of himself and the Class.

142.   Plaintiff, and Class members, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products.

143.   Defendants voluntarily accepted and retained this benefit.

144.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

145.   Defendants received benefits in the form of revenue from sales of the Products to the detriment of Plaintiff and Class members, because Plaintiff and Class members purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

146.   Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and Class members. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and Class members, because they would have not purchased the Products had they known the true facts.

147.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust

enrichment, as ordered by the Court.

## COUNT XI
## Medical Monitoring

148.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

149.   Plaintiff brings this count on behalf of himself and the Class.

150.   Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, testing, quality assurance, quality control, labeling, warning, sale and/or distribution of the Philips CPAP and BiPAP devices, including a duty to assure that their products did not pose a significantly increased risk of life-threatening bodily harm and disease.

151.   Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, warning, marketing, promotion and distribution of the Philips CPAP and BiPAP devices as Defendants knew or should have known that these products caused significant bodily harm and were not safe for use by consumers.

152.   As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class members experienced a significant increase of risk of developing serious diseases and illnesses, including but not limited to,

developing Type 2 Diabetes, heart problems and cancer.[28]

153.   As a direct and proximate result of inhaling and being exposed to the PE-PUR foam, Plaintiff and Class members will now have to undergo periodic medical testing for Type 2 Diabetes, heart problems and cancer.

154.   Early detection, through periodic medical testing for Type 2 Diabetes, heart problems, and cancer, will significantly decrease the risk of the severity of the illness and injury and will decrease the risk of death.

155.   It is inequitable that Plaintiff and Class members should have to pay out-of-pocket for these medical tests when Plaintiff and Class members would not have been exposed to PE-PUR foam but for Defendants' negligence.

156.   Plaintiff and Class members seek full compensatory damages for future expenses to undergo periodic medical testing for Type 2 Diabetes, heart problems and cancer.

157.   Plaintiff and Class members seek to establish a fund to provide medical monitoring, evaluation and assessment of Plaintiff and all class members for their lifetimes.

---

[28] **Ex A**.: Philips Respironics Recall letter

## COUNT XII
## PUNITIVE DAMAGES

158.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

159.   Plaintiff brings this count on behalf of himself and the Class.

160.   Philips knew or should have known that the subject devices were inherently dangerous with respect to the risk of PE-PUR foam degradation causing exposure to toxic particulates, chemical emissions, or other compounds resulting in harmful and carcinogenic effects, including lung cancer.

161.   Philips knew or should have known that the subject devices were inherently more dangerous with respect to the aforesaid risks than alternative devices on the market.

162.   Philips attempted to and did misrepresent facts concerning the risks and safety of the subject devices.

163.   Defendants risked the safety of users of their products, including Plaintiff and Class members, when Defendant knew of the safety and efficacy problems of the CPAP and BiPAP devices and suppressed this knowledge from the general public.

164.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting users of its recalled devices despite knowing that these

devices were defective and unreasonably dangerous in nature.

165.   Notwithstanding the foregoing, Philips marketed the subject devices without disclosing the aforesaid health and safety risks when there were safer alternative devices that did not pose the same or similar health and safety risks.

166.   Defendants knew or should have known that this conduct would result in injury or damage but continued to mislead both the medical community and the public at large, including Plaintiff and Class members, by making false representations about the safety and efficacy of the recalled devices.

167.   Philips' intentional, reckless, fraudulent, and malicious failure to disclose information regarding the health and safety risks of the subject devices deprived Plaintiff, Class members, and their physicians of the necessary information to enable them to weigh the true risks of using the subject devices against their benefits.

168.   Defendants acted with wanton and reckless conscious indifference and utter disregard of the consequences of their actions upon the health, safety and rights of others, including Plaintiff and Class members.

169.   As a direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff and Class members, Plaintiff and Class members have suffered severe and permanent economic injuries as set forth above. Defendants' outrageous conduct warrants an

award of punitive damages.

170.   The aforesaid conduct of Philips was committed with knowing, conscious, and deliberate disregard for the rights and safety of patients, including Plaintiff and Class members, thereby entitling Plaintiff and Class members to punitive damages in an amount appropriate to punish Philips and deter it from similar conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

a.   Order the establishment of a fund to provide medical monitoring, evaluation and assessment of Plaintiff and all Class members for their lifetimes.

b.   Certify the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

c.   Declaring that Defendants are financially responsible for notifying the members of the Class about the pendency of this action;

d.   Award compensation for economic loss, included but not limited to medical expenses, future medical expenses, difference of current market value and the market value at the time of purchasing the

CPAP and BiPAP devices, to which Plaintiff and Class members are entitled;

e.  Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

f.  Award pre-judgment and post-judgment interest;

g.  Grant appropriate injunctive and/or declaratory relief;

h.  Award reasonable attorney's fees and costs; and

i.  Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully Submitted,

*/s/David Pastor*_____
David Pastor
BBO# 391000
**PASTOR LAW OFFICE, LLP**
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
(617)-742-9700
Email: dpastor@pastorlawoffice.com

-AND-

**ANASTOPOULO LAW FIRM, LLC**
Roy T. Willey, IV**
Eric M. Poulin**
Blake G. Abbott**
32 Ann Street
Charleston, SC 29403
(843) 614-8888
Email: roy@akimlawfirm.com
           eric@akimlawfirm.com
           blake@akimlawfirm.com


** Pro Hac Vice Admission Forthcoming


Dated: January 4, 2022                    **ATTORNEYS FOR PLAINTIFF**